## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.:_____

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR INDYMAC BANK, F.S.B.,

        Plaintiff,

v.

FIDELITY NATIONAL TITLE INSURANCE
COMPANY, a Florida corporation,

        Defendant.

_____/

## **COMPLAINT**

Plaintiff the Federal Deposit Insurance Corporation as Receiver of IndyMac Bank, FSB ("FDIC-R" or "Plaintiff"), sues Defendant Fidelity National Title Insurance Company ("Fidelity" or "Defendant"), and alleges as follows:

### **INTRODUCTION**

1. This action is brought against Fidelity for its breach of a closing protection letter ("CPL") it issued to IndyMac Bank, F.S.B. ("IndyMac") in connection with a loan transaction for which Fidelity's approved agent, Clear Title Expert Corp. ("Clear Title") was the closing/settlement agent.

2. Under the CPL at issue, Fidelity specifically agreed to reimburse IndyMac for actual loss incurred in connection with the closings when the loss arose out of Clear Title's failure to follow IndyMac's closing instructions or Clear Title's fraud or dishonesty in closing the transaction.

1

3. As set forth in more detail below, Clear Title failed to comply with IndyMac's closing instructions and/or acted dishonestly in connection with the closing, which entitled IndyMac to reimbursement under the CPL issued by Fidelity.

4. Fidelity has failed and refused to fulfill its duties and obligations in breach of the CPL, causing monetary injury to IndyMac. The FDIC as receiver for IndyMac files this action to recover its losses caused by Fidelity's breach.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A), because the FDIC-R is a party and therefore, this controversy arises under the laws of the United States.

6. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district, Clear Title's principal place of business was in this district, and the real property underlying the transaction at issue is located in this district.

## THE PARTIES

7. IndyMac was a federally chartered savings bank with its principal place of business in Pasadena, California.

8. The Federal Deposit Insurance Corporation ("FDIC") is a corporation and instrumentality of the United States of America, established under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811-1835(a). On July 11, 2008, the Office of Thrift Supervision appointed the FDIC as Receiver for IndyMac. 12 U.S.C. § 1821(c). The FDIC-R is acting in its capacity as Receiver and is empowered to sue and complain in any court of law pursuant to 12 U.S.C. § 1819. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R, by operation of law, succeeded to all rights, titles, powers, and privileges of IndyMac and, among others, the depositors, accountholders, and stockholders of IndyMac. In this action, the FDIC-R seeks to recover damages resulting from the conduct of the Defendants. As Receiver, the FDIC-R is tasked with

the obligation to recover losses incurred as a result of IndyMac's operations, including losses resulting because of loans funded by IndyMac.

9. Defendant Fidelity is a Florida corporation, with its principal place of business in Jacksonville, Florida. Fidelity is engaged in the business of issuing title insurance policies and closing protection letters, among other things, and is doing business in Broward County, Florida.

10. Clear Title was a closing/settlement agent who performed closing services on IndyMac loans. Fidelity issued CPLs and title policies on certain loans closed by Clear Title, including the loan at issue in this matter.

## COUNT I
## BREACH OF CONTRACT

11. Plaintiff realleges paragraphs 1 through 10, as if fully set forth herein.

### The Closing

12. On or about August 23, 2007, IndyMac funded a loan to borrower Raphael Deshommes ("Deshommes") in the amount of $669,750 (the "Loan"), for the purchase of property located at 474 SW 159th Lane, Pembroke Pines, Florida 33025 (the "Property"). Deshommes purchased the Property from Stephanie B. Warnell for $705,000 (the "Transaction").

13. Clear Title agreed to serve as the closing/settlement agent for Deshommes's purchase of the Property.

14. In agreeing to serve as the closing agent for the Loan, Clear Title agreed to abide by IndyMac's closing instructions, which include the Lender's Closing Instructions and the Addendum to Lender's Closing Instructions (the "Closing Instructions").

15. The Closing Instructions provided that Clear Title was only authorized to act as directed by the Closing Instructions and emphasized strict compliance, stating in part:

> These are the lender's instructions to you for closing. You are directed to follow these instructions in full, at which time you may request funds. You are not authorized to close this transaction unless you can strictly comply with these instructions. These instructions can only be changed, modified or waived in writing

3

and delivered or telecopied to you by an authorized agent of the lender.

16. The Closing Instructions further required:

**CLOSING DOCUMENT REQUIREMENTS:** …

24. Settlement Agent must notify us, in writing, if there are indications that funds to close or the earnest money deposit did not come from the Borrower.

17. The Closing Instructions further required as follows:

**INDYMAC CONDITIONS:** …

**42. Final signed HUD-1** … **must be approved prior to disbursement.** …

18. Clear Title executed the Closing Instructions and certified its compliance with all of the conditions outlined in the Closing Instructions.  For example, the Closing Instructions provided:

> **… CLOSING AGENT HEREBY CONFIRMS THAT ALL FUNDS RECEIVED FROM LENDER FOR DISBURSEMENT OF THE REFERENCED LOAN(S) WILL BE ... DISBURSED IN ACCORDANCE WITH THE LENDER'S INSTRUCTIONS HEREIN.**
>
> SETTLEMENT AGENT AGREES TO CLOSE THIS LOAN IN ACCORDANCE WITH ALL OF THE INSTRUCTIONS.

19. Deshommes purportedly purchased the Property for $705,000 financed in part by the Loan.

20. IndyMac approved the Loan, which required Deshommes to pay no less than $43,139.68 as a down payment (the "Down Payment"), at or before the closing of the Loan.

21. Fidelity issued a title insurance policy and a CPL for the Loan.

22. In the CPL for the Loan (the "Deshommes CPL"), Fidelity specifically agreed to reimburse IndyMac for actual loss incurred in connection with the closing of the Loan when the loss arises out of Clear Title's failure to follow the Closing Instructions or Clear Title's fraud or dishonesty in closing the transaction.

4

**Clear Title's Breach of the Closing Instructions and Fraud
and/or Dishonesty in Connection with the Loan**

23. Prior to receiving IndyMac's approval to disburse the Loan funds, Clear Title submitted a HUD-1 to IndyMac for IndyMac's approval. The HUD-1 provided to IndyMac for approval represented that Clear Title would collect the $43,139.68 Down Payment from Deshommes at or before the closing of the Loan and disbursal of IndyMac's Loan funds. Based at least in part on this representation, IndyMac approved the HUD-1 submitted by Clear Title authorizing Clear Title to proceed with the closing of the Transaction.

24. Despite IndyMac's requirement that Deshommes pay no less than $43,139.68 as a down payment, and that these funds come from the borrower himself rather than a third party, Clear Title failed to collect the Down Payment from Deshommes and proceeded to close the Loan despite its awareness that Deshommes had not paid the Down Payment himself.

25. Contrary to its representations to IndyMac that it would collect Deshommes's Down Payment prior to closing, Clear Title did not receive the Down Payment from Deshommes in connection with the Loan.

26. Instead, Clear Title collected a cashier's check from the property seller (rather than from Deshhomme) in the amount of $43,139.68 purporting to be Deshommes's Down Payment and only collected this payment *after* it closed the Loan and after it disbursed the proceeds from the Loan to the property seller.

27. More specifically, on August 23, 2007, IndyMac sent $666,647.47 to Clear Title via wire transfer representing the Loan funds for the Transaction.

28. Immediately thereafter, still on August 23, 2007, Clear Title sent $213,130.32 from IndyMac's loan funds via wire transfer to an account belonging to the seller of the property, Stephanie Warnell.

29. On August 24, 2007, utilizing the funds provided by Clear Title, Warnell purchased a cashier's check in the amount of $43,139.68 ("Seller's Cashier Check"), which was obtained for the purpose of representing Deshommes's Down Payment.

30. The Seller's Cashier Check was subsequently provided to Clear Title (purporting to satisfy Deshommes's Down Payment obligation) and on August 27, 2007, Clear Title deposited the Seller's Cashier Check into its escrow account.

31. Upon information and belief, by depositing the Seller's Cashier Check on August 27, 2007, Clear Title intended to provide the appearance as though Clear Title had received a down payment from Deshommes in the amount of $43,139.68, as had been required by IndyMac and represented by Clear Title on the HUD-1 for this transaction. In reality, however, the funds deposited by Clear Title on August 27, 2007 had been obtained directly from the IndyMac's loan funds, and not Deshommes's own funds

32. Because Clear Title was aware that it had disbursed the Loan proceeds prior to receiving any borrower down payment, and that it had received Deshommes's Down Payment from someone other than the borrower, pursuant to the Closing Instructions, Clear Title was not authorized to close the Loan. Nevertheless, Clear Title proceeded to close the Loan without authorization to do so and despite its obligations under the Closing Instructions.

33. Clear Title was the gatekeeper for the Transaction and was responsible for overseeing the closing. Rather than fulfilling its duties as a closing agent, Clear Title instead acted deliberately, knowingly, and/or was willfully blind to facts that would otherwise be obvious, and/or acted with reckless disregard for its duties as closing agent during the closing of the Loan.

34. Clear Title's misconduct led IndyMac to believe it was funding a loan to a legitimate borrower who had made a down payment from his own funds when, in fact, Deshommes was never a legitimate borrower in this transaction, nor had Deshommes ever made a down payment.

35. At the time of the closing of the Loan, IndyMac had a reasonable expectation that it would have (1) a *bona fide* mortgagor in Deshommes with the capacity and intent to make mortgage payments; (2) a valid first lien on the Property; and (3) the right to seek recovery of a deficiency after foreclosure from the mortgagor Deshommes.

36.     A borrower's satisfaction of his or her down payment obligation is critical to a lender because it provides assurance of a borrower's legitimacy as one who holds an equity investment in the property and who sincerely intends to make future payments on the loan.

37.     Deshommes was a straw buyer in the transaction who provided no down payment. Since Deshommes would not lose his own money by defaulting on the Loan, he had no personal incentive to pay his mortgage and, in fact, did default on the Loan after making just three (3) payments. Without a *bona fide* mortgagor, the Loan was set up to guarantee a default. Clear Title's conduct during the closing caused IndyMac to fund a mortgage without a *bona fide* mortgagor, depriving IndyMac of the *bona fide* mortgagor for which it bargained.

**Fidelity's Breach of Contract**

38.     Plaintiff sought reimbursement under the Deshommes CPL for its losses arising from the Loan, but Fidelity has refused and continues to refuse to indemnify Plaintiff for its losses under the Deshommes CPL.

39.     The Deshommes CPL requires Fidelity to reimburse actual losses incurred by IndyMac. The Deshommes CPL states in pertinent part as follows:

> Fidelity National Title Insurance Company . . . hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by [Clear Title], when such loss arises out of:
>
> 1. Failure of [Clear Title] to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such claims or title or lien, or (b) the obtaining of any other document, specifically required by you, . . . or (c) the collection and payment of funds due to you, or
>
> 2. Fraud or dishonesty of [Clear Title] in handling your funds or documents in connection with such closing.

40.     Plaintiff has a right to reimbursement of its actual losses stated in this Complaint because they are covered under the Deshommes CPL.

7

41. Clear Title, as Fidelity's approved agent, failed to comply with the Closing Instructions by, *inter alia*, failing to collect the borrower's required funds to close from the borrower himself, collecting the borrower's required funds to close after the loan had already closed and the loan funds had been disbursed, collecting the borrower's required funds to close from the seller of the property, submitting a false HUD-1 for IndyMac's approval, and otherwise disguising the misuse of IndyMac's loan proceeds. Furthermore, Clear Title, as Fidelity's agent, acted fraudulently and/or dishonestly in handling IndyMac's funds and documents in connection with the closing of the Loan.

42. Fidelity materially breached the Deshommes CPL by not reimbursing Plaintiff for the actual losses incurred by Plaintiff as a result of Clear Title's fraud and/or dishonesty and/or breach of the Closing Instructions, as set forth above.

43. As a direct and proximate result of these material breaches, Plaintiff has suffered damages, including a severely under-secured mortgage loan from which only a fraction of the Loan debt could be recovered through loss mitigation attempts.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant Fidelity National Title Insurance Company, in its favor, awarding it damages, costs, attorney's fees, and such other relief this Court deems proper.

DATED: July 9, 2014

    **STOLZENBERG GELLES FLYNN & ARANGO, LLP**
    1401 Brickell Avenue, Suite 825
    Miami, Florida 33131
    Telephone: 305-961-1450
    Facsimile: 305-423-3979
    *Counsel for Plaintiff FDIC-R*

       /s/ Joshua A. Migdal
By:_____
    Joshua A. Migdal, Esq.
    Florida Bar No. 19136
    Andrew P. Cummings, Esq.
    Florida Bar No. 98355